UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MORGAN STANLEY SMITH BARNEY LLC WAGE AND HOUR LITIGATION<br><br>MDL 2280 | Civ. No. 2:11-3121<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Jimmy Kuhn, Nick Pontilena, Howard Rosenblatt and Denise Otten (collectively "Plaintiffs") bring this putative collective action under the Fair Labors Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and three putative wage and hour class actions against Defendants Morgan Stanley Smith Barney LLC and Morgan Stanley & Co., Inc. (together "MSSB"). This matter comes before the Court on MSSB's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Plaintiffs' motion to strike portions MSSB's response to Plaintiffs' counterstatement of facts. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, MSSB's motion for summary judgment is **GRANTED** and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. Plaintiffs' motion to strike is **DENIED** as moot.

I.  BACKGROUND

MSSB is a financial services firm focused on providing financial advisory services and selling various investment products to a large and diversified clientele. *See* Op. 1, ECF No. 146. Plaintiffs worked for MSSB for varying durations as Financial Advisors ("FAs"). On May 31, 2011, Plaintiff Pontilena filed a class and collective action complaint in this Court, alleging that MSSB violated the FLSA by failing to pay overtime wages, and that it violated New Jersey law by failing to pay overtime wages, making impermissible deductions from employees' wages and failing to maintain records. *See* Compl. ¶¶ 49–90, ECF No. 1. This Court subsequently consolidated Pontilena's claims with similar claims emanating from Connecticut, New York and Rhode Island, creating a multidistrict class and collective action against MSSB, alleging ten counts in violation of the FLSA and various state labor laws. *See* Order, ECF No. 15; Am. Compl. ¶¶ 60–160, ECF No. 17. During the ensuing litigation, the Court dismissed all of Plaintiffs' claims except for the FLSA overtime claim and the Connecticut, New Jersey and New York overtime claims. *See* Ops., ECF Nos. 31, 56, 75; Third Am. Compl. (the "Complaint") ¶¶ 53–80, 91–115, ECF No. 74. On April 11, 2016, the Court denied Plaintiffs' motion for class action and

conditional collective certification. *See* ECF No. 146. Consequently, Plaintiffs' individual overtime claims are all that remain before the Court.

MSSB now moves for summary judgment on Plaintiffs' remaining overtime claims, arguing: (1) the FLSA claim fails because Plaintiffs satisfied the administrative exemption (hereinafter "the Exemption"), *see* Defs.' Mem. of Points & Authorities in Supp. of Mot. for Summ. J. ("Defs.' Mem.") 9–26, ECF No. 155-1; (2) Plaintiffs Otten, Pontilena and Kuhn also satisfied the highly compensated exemption, *see id*. at 26–28; (3) Plaintiffs Pontilena and Kuhn's FLSA claims are time barred, *see id*. at 28–29; and (4) the administrative exemptions under the three state laws mirror the FLSA and Plaintiffs are, therefore, exempt under state law for the same reasons as they are under the FLSA, *see id*. at 29–30. Plaintiffs oppose the application of the Exemption, countering that genuine issues of material fact exist as to the following: (1) whether Plaintiffs were paid the required minimum salary of $455 per week, *see* Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp'n") 4–6, ECF No. 159; (2) whether Plaintiffs' primary duty at MSSB was the performance of office or non-manual work directly related to MSSB's management or general business operations, *see id*. at 6–36; and (3) whether Plaintiffs exercised discretion and independent judgment to significant matters, *see id*. at 36–39. Plaintiffs also contest MSSB's other claims concerning the highly compensated exemption, the statute of limitations, and the state labor laws at issue. *See id*. at 39–43. MSSB filed a reply brief on December 15, 2016. *See* Defs.' Reply in Supp. of Mot. for Summ. J. ("Defs.' Reply"), ECF No. 161. Shortly thereafter, Plaintiffs' filed a separate motion to strike portions of MSSB's objections to Plaintiffs' counterstatement of facts. *See* Pls.' Mot. to Strike, ECF No. 162. The Court will address both motions in the instant opinion.

The record before the Court consists primarily of deposition testimony given by the Plaintiffs and MSSB's corporate representative, MSSB's responses and objections to Plaintiffs' requests for admission, MSSB internal documents and emails, Plaintiffs' pay stubs and tax documents, and two third-party news articles. *See* Decls., ECF Nos. 155-4, 156-2 (filed under seal), 160, 161-2. The parties purport to disagree over which facts are in dispute, but the Court finds that their disagreements mainly concern the legal significance of the facts and not what the facts actually are. After full review of the record, the Court finds the following facts to be relevant and undisputed:

1. At all relevant times, Plaintiffs maintained a Series 7 license as required by the Financial Industry Regulatory Authority ("FINRA"). Pls.' Counterstatement of Material Facts Not in Dispute ("Pls.' Counterstatement") ¶¶ 7–10, ECF No. 159-1.

2. At all relevant times, Plaintiffs complied with FINRA Rule 2090, Know Your Customer (the "KYC Rule"), with respect to the establishment of new client accounts and management thereafter. *Id*. at ¶ 11; Otten Dep. 53:18–24; Pontilena Dep. 33:14–35:9; Kuhn Dep. 66:14–22; Rosenblatt Dep. 82:6–18.

3. In compliance with the KYC Rule, Plaintiffs engaged each new client in the following manner: ascertained and analyzed the client's financial status; discussed the client's financial goals, risk tolerance and overall knowledge of the financial

industry; evaluated the client's entire financial picture in light of the information received, including performing an asset allocation analysis; identified specific financial products that best fit the client's specific needs; made investment recommendations to the client; and, upon client's direction, invested assets accordingly.  Otten Dep. 54:14–58:22; Pontilena Dep. 35:10–40:1; Kuhn Dep. 69:5–73:15; Rosenblatt Dep. 81:1–82:18.

4. In compliance with the KYC Rule, Plaintiffs also monitored their existing clients' accounts on a continual basis to ensure that performance met expectations and altered investment strategies as necessary to respond to their clients' changing needs.  Otten Dep. 78:15–79:15; Pontilena 40:2–41:8; Kuhn Dep. 71:8–72:6; Rosenblatt 86:11–88:8.

5. In making investment recommendations, Plaintiffs provided their clients with multiple options with which to invest, often selecting from hundreds of financial products provided by MSSB based on each client's financial picture.  *See* Otten Dep. 58:4–22; Pontilena Dep. 38:3–12; Kuhn Dep. 72:18–73:15, 75:6–7; Rosenblatt Dep. 106:5–22.

6. Plaintiffs researched economic developments, market movements and other current events to help inform the recommendations they made to their clients.  Otten Dep. 58:18–22, 59:24–61:1; Pontilena Dep. 70:25–71:12; Kuhn Dep. 79:20–80:8; Rosenblatt Dep. 100:4–10.

7. Plaintiffs made their investment recommendations in the best interest of their clients.  Otten Dep. 58:14–17; Pontilena Dep. 38:13–23; Kuhn Dep. 67:12–18; Rosenblatt Dep. 102:3–9.

8. Plaintiffs never spent more than one hour of their time during a work-day executing purchases and sales for their clients' portfolios.  Otten Dep. 159:13–160:14; Pontilena Dep. 75:6–76:14; Kuhn Dep. 86:16–87:11; Rosenblatt Dep. 113:5–9.

9. Plaintiffs were supervised by branch managers.  Plaintiffs' interactions with their supervisors concerning work-related matters varied, the frequency of which ranged from daily to sparse.  Otten Dep. 157:17–158:22; Pontilena Dep. 109:11–110:13; Kuhn Dep. 75:22–76:13, 184:14–185:9; Rosenblatt Dep. 150:11–18.

10. With very few exceptions, Plaintiffs did not require pre-approval from their supervisors to execute purchases and sales on behalf of their clients.  Otten Dep. 152:25–153:4; Pontilena Dep. 110:14–111:3; Kuhn Dep. 114:14–115:5; Rosenblatt Dep. 149:11–150:10.

11. Plaintiffs undertook various marketing activities designed to ascertain new clients, including "cold" and "warm" calling prospect leads[1] and hosting seminars and client

---

[1] Plaintiff Pontilena described the difference between "cold calling" and "warm calling" in the following way: "Warm calling is where you might know somebody, know who they are, but not ever approach them for business.  So, you call somebody that you know through someone or what have you, and you just, you know, try to get a business appointment from that, as opposed to cold calling, where, you know, you're totally cold, and you don't know who

     dinners. Otten Dep. 108:18–109:22, 120:22–24, 122:10–14; Pontilena Dep. 48:7–49:22; Kuhn Dep. 56:13–23, 81:7–83:16; Rosenblatt Dep. 65:5–16, 82:19–83:5.

12. At all relevant times, Plaintiffs were paid a minimum of $1,972.00 in monthly compensation. Plaintiffs did not receive incentive-based compensation until their gross revenues exceeded their minimum monthly compensation. *See* Palmerini Decl. at ¶ 8, Ex. A; Liskow Decl., Ex. 1 at MS-006426; Otten Dep. 186:9–187:5; Pontilena Dep. 91:8–93:3; Kuhn Dep. 179:14–184:3; Rosenblatt Dep. 117:15–120:8.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp*., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III.   DISCUSSION

Despite their attempts to create other disputes, the parties' papers reveal that there is truly only one issue before the Court: whether Plaintiffs' primary duty as FAs consisted of sales activity or whether that duty amounted to exempt activity as defined by regulatory guidance. Before turning to that issue, however, the Court will first address Plaintiffs' motion to strike because it seeks to constrain what the Court may consider at summary judgment.

### A.  Plaintiffs' Motion to Strike

Plaintiffs moved to strike portions of MSSB's Objections and Responses to Plaintiffs' Counterstatement of Facts ("MSSB's Responses") that violate Local Civil Rule 56.1. Specifically, Plaintiffs argue that Local Rule 56.1 only allows MSSB to respond to Plaintiffs' supplemental statement of facts and prohibits any contest to Plaintiffs' responses to MSSB's statement of undisputed facts. Pls.' Mot. to Strike at 2. Furthermore, Plaintiffs argue that MSSB's Responses are laced with impermissible legal argument, which the Court should not consider. *Id*. at 2–3.

While the Court agrees that MSSB's Responses contain some impermissible content, Plaintiffs' motion to strike is unnecessary. The Court is "empowered to disregard those portions of a Rule 56.1 statement that violate the rule." *See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.* 85 F. Supp. 3d 785, 792 (D.N.J. 2015). The Court,

---

you're talking to." Pontilena Dep. 51:9–16.

therefore, "will sort out the permissibility of particular items [of both parties' statements] if and as necessary to [its] analysis." *See id*. Accordingly, Plaintiffs' motion to strike is **DENIED** as moot.

### B. The FLSA Administrative Exemption

The Exemption applies to any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*See* 29 C.F.R. § 541.200(a) (2016).

Further explanation of the above criteria can be found elsewhere in the regulations. Relevant to the instant case, the "primary duty" requirement means that "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *See* § 541.201(a). Additionally, a primary duty may include "employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) . . . ." *See* § 541.201(c). The regulations identify factors to consider when determining an employee's primary duty, including, but not limited to: (1) the relative importance of the exempt duties as compared to other types of duties; (2) the amount of time spent performing exempt work; and (3) the employee's relative freedom from direct supervision. *See* § 541.700(a). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," but time alone "is not the sole test." *See* § 541.700(b).

The "discretion" requirement is further explained as involving "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *See* § 541.202(a). Moreover, "[t]he exercise of discretion and independent judgment implies that the employee has the authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *See* § 541.202(c).

The regulations contemplate specific examples of the types of employees who are exempt, including such employees in the financial services industry:

> Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's

5

> income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

Sec. 541.203(b).

### i. The Department of Labor Opinion Letter

In November 2006, the U.S. Department of Labor ("DOL") published an opinion letter (the "Letter") that specifically addressed whether FAs meet the Exemption. Dep't of Labor, Wage & Hour Div., Op. Ltr. Fair Labor Standards Act ("Op. Ltr."), No. FLSA2006-43, 2006 WL 3832994 (Nov. 27, 2006). [2] In this definitive piece of guidance, the DOL considered the applicability of the Exemption to a job description identical to what Plaintiffs described in their deposition testimonies. *Compare id.* at *1–2 (describing FAs' primary duty as collecting clients' financial information, analyzing it, comparing and evaluating possible investment options and identifying investment strategies to meet clients' needs), *with* Otten Dep. 54:14–58:22 (describing Plaintiff's adherence to the KYC Rule), *and* Pontilena Dep. 35:10–40:1 (same), *and* Kuhn Dep. 69:5–73:15 (same), *and* Rosenblatt Dep. 81:1–82:18 (same). The DOL concluded:

> [FAs] have a primary duty other than sales, because their work includes collecting and analyzing a clients' financial information, advising the client about the risks and the advantages and disadvantages of various investment opportunities in light of the client's individual financial circumstances, and recommending to the client only those securities that are suitable for the client's particular financial status, objectives, risk tolerance, tax exposure, and other investment needs. Based upon the foregoing, we conclude that these [FAs] satisfy the duties requirement under 29 C.F.R. § 541.203(b).

Op. Ltr., 2006 WL 3832994 at *5.

The DOL further concluded that FAs satisfied the discretion requirement because their duties "include evaluating the client's individual financial circumstances and investment needs and assessing and comparing the alternatives before making recommendations for investment options to the client . . . ." *Id.* at *6. Finally, the DOL concluded that the FAs' "salary/draw" compensation plan satisfied the salary requirement

---

[2] The Letter refers to the employees in question as "registered representatives," which includes varying job titles "such as account executives, broker-representatives, financial executives, financial consultants, *financial advisors*, investment professionals, and stockbrokers." *Id.* at *1 (emphasis added). For convenience, the Court will refer to "registered representatives" as "FAs" in quoted text.

because "the FA at all times is guaranteed and receives not less than a predetermined amount that equals or exceeds the $455 minimum . . . ." *See id*. at *6–7.

### ii. Judicial Applications of the Exemption

Two courts have considered the precise issue before this Court at summary judgment: whether the Exemption applies to FAs. In *Hein v. PNC Fin. Servs. Group, Inc.*, the Eastern District of Pennsylvania held that the Exemption applied. 511 F. Supp. 2d 563, 575 (E.D. Pa. 2007). The parties conceded that Plaintiff satisfied the salary and discretion requirements. Thus, the only question before the court was whether Plaintiff's primary duty constituted sales or exempt activities. *Id*. at 571. Plaintiff spent approximately 50 percent of his time on the phone, conducting what Plaintiffs in this case have described as "cold calling." *See id*. at 568–69, 573. Plaintiff also performed tasks similar to those described by Plaintiffs in this case, including: research of particular financial instruments; learning clients' assets, holdings and investment aims; recommending appropriate investments based on an individual client's needs; implementing actual transactions; and generating new sales leads. *See id*. at 569.

The court held that plaintiff satisfied the primary duty requirement. First, plaintiff's most important task was to "make appropriate recommendations to clients, even if he did not realize a sale as a result." *See id*. at 572. Second, while plaintiff spent some time processing actual transactions—*i.e.*, non-exempt sales activity—the majority of his time was spent performing exempt duties, such as collecting and analyzing client information and recommending appropriate investments. *See id*. at 573–74. Importantly, "cold calling" was exempt activity, at least in part, because such calls were used to "elicit information about assets and investment goals," which was considered administrative work under DOL regulations. *See id*. at 573. Third, plaintiff exercised independence and discretion because his supervisor did not directly review his recommendations to clients, attend client meetings, and listen to client phone conversations, among other reasons.[3] *See id*. at 574.

More recently, in *Tsyn v. Wells Fargo Advisors, LLC*, the Northern District of California similarly held that the Exemption applied. *See* No. 14-cv-2552, 2016 WL 612926, at *11 (N.D. Cal. Feb. 16, 2016). As in *Hein*, plaintiffs' activities in *Tsyn* mirrored those presented by Plaintiffs here.[4] *See id*. at *6. The court deferred to the DOL's Letter in finding that the pattern of plaintiffs' work met the DOL's description of the primary duty requirement: "one where analysis, judgment, and advice predominate, and where attendant sales are relatively 'incidental.'" *See id*. at *9. Furthermore, the court rejected plaintiffs' argument that their primary duty constituted sales activity because their work was "ultimately motivated by the desire to sell financial products." The court determined that

---

[3] The court also considered a fourth factor, which was a comparison of plaintiff's salary to that of a non-exempt employee. *See id*. at 574–75.
[4] "They collected and analyzed clients' financial information, assessed their particular needs, developed investment plans, advised clients about the benefits and drawbacks of different investments, and made suitable investment recommendations. They also marketed and promoted their services." *Id.*

7

this "reductive characterization is at all levels inconsistent with longstanding regulation" and "with *express* regulatory guidance." *See id*. at *11 (emphasis original).

Plaintiffs in this case rely on *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir. 1991), and DOL Administrative Interpretation ("Interpretation") No. 2010-1, in support of their argument that their primary duty was non-exempt sales activity. *See* Pls.' Opp'n at 7–14. Plaintiffs ignore, however, that the Court has already rejected their reliance on these authorities at the class and collective action certification phase. *See* ECF No. 146 at 11, n.3. Notably, *Cooper* addressed individuals who sold electrical products and the DOL Interpretation addressed mortgage loan officers. Neither authority is on point here. *See id*. Instead, the Court will rely on the regulatory authority and case law that expressly address FAs. The Court finds that the DOL's regulations provide the agency's body of experience and informed judgment about the FLSA, which commands considerable deference. *See Hein*, 511 F. Supp. 2d at 570 (citation omitted). With this understanding, the Court will now apply the undisputed facts to the Exemption's three requirements.

### iii. Salary Requirement

Plaintiffs do not deny that they received a minimum of $1,972.00 per month in compensation at all relevant times. *See* Pls.' Counterstatement at ¶¶ 16–17. Rather, they argue that they were paid a "draw" on their commissions, which violated the Exemption's salary requirement. *See* Pls.' Opp'n at 4–6. In their own words, Plaintiffs acknowledged that they received commission payments only after their gross revenues exceeded their monthly "draws." *See* Otten Dep. 187:2–5; Pontilena Dep. 91:8–93:3; Kuhn Dep. 179:14–184:3; Rosenblatt Dep. 118:5–120:8. Plaintiffs testified that if they did not produce enough gross revenues to cover their monthly "draws," then their commissions would be reduced in subsequent months to cover the deficiency. *See* Otten Dep. 186:11–22; Pontilena Dep. 90:5–9; Kuhn Dep. 182:4–17; Rosenblatt 117:3–9. Regardless of these commission reductions, however, Plaintiffs still received their "draws" every month. *See* Otten Dep. 188:25–189:4; Pontilena Dep. 92:3–22; Rosenblatt Dep. 119:20–120:2 ("There was always an automatic deposit every two weeks.").

The DOL's Letter makes clear that this compensation model meets the salary requirement. *See* Op. Ltr., 2006 WL 3832994, at *3, 6–7 (describing a "reconciliation process" between the salary/draw and fee/commission components of compensation and concluding that it meets the salary requirement). Plaintiffs' characterization of their compensation as a "draw" is irrelevant. Plaintiffs received a predetermined amount of at least $1,972.00 per month at all relevant times, which clearly satisfies the requirement. *See* Palmerini Decl. at ¶¶ 4, 8, Ex. A. It is, therefore, undisputed that Plaintiffs' compensation satisfied the salary requirement.

### iv. Primary Duty

Plaintiffs admit that they performed all of the tasks described in the regulations and the DOL's Letter as exempt duties under the primary duty requirement. *See* Part I, *supra*, at 2–3 (Fact No. 3). Plaintiffs argue, however, that their performance of these tasks was

8

"incidental to sales" and that their primary duty as FAs was, therefore, the non-exempt sale of financial products. *See* Pls.' Opp'n at 23–24.

Plaintiffs' argument mirrors that of the plaintiffs in *Tsyn*, which that court rejected as a "reductive characterization" that defies the regulations. *See* 2016 WL 612926, at *11. Plaintiffs attempt to convince this Court that *Tsyn* is inapplicable here because: (1) the facts in *Tsyn* were undisputed whereas Plaintiffs dispute the facts in the instant case; (2) Plaintiffs contend that their performance of exempt tasks was "part and parcel" of selling financial products whereas plaintiffs in *Tsyn* merely argued that their performance was "secondary" to selling; and (3) the *Tsyn* court erroneously rejected the DOL's Interpretation because it concerned mortgage loan officers even though it was intended to apply broadly to all employees subject to the Exemption. *See* Pls.' Opp'n at 30–31.

The Court is not persuaded. First, the facts here, as in *Tsyn*, are undisputed. As noted, Plaintiffs' own deposition testimonies unequivocally establish that they performed tasks identical to those described in the DOL's Letter and in the *Tsyn* opinion. Second, Plaintiffs' characterization that their performance of these tasks was "part and parcel" to selling financial products is irrelevant. The only relevant inquiry is whether their performance "directly related to the management or general business operations of the employer or the employer's customers." *See* 29 C.F.R. § 541.200(a)(2). Third, the Court has already concluded that the Interpretation upon which Plaintiffs rely is uninformative of whether Plaintiffs' primary duty satisfies the Exemption. *See* ECF No. 146 at 11. Furthermore, even assuming that the DOL intended for it to apply broadly, that does not mean that the Interpretation was intended to apply to the financial services industry, where the DOL had already published an opinion expressly applying the Exemption to Plaintiffs' exact job description.

The Court is more persuaded by the DOL's Letter and the *Tsyn* and *Hein* opinions in applying the instant facts to the Exemption. In so doing, the Court concludes that Plaintiffs' primary duty clearly satisfied the Exemption. While the time spent performing the exempt tasks may have varied among the Plaintiffs, they all admit that they spent no more than one hour per day performing the non-exempt task of processing transactions for their clients' portfolios. *See* Otten Dep. 159:13–160:14; Pontilena Dep. 75:6–76:14; Kuhn Dep. 86:16–87:11; Rosenblatt Dep. 113:5–9; *see also Hein*, 511 F. Supp. 2d at 573–74 (describing the processing of transactions as non-exempt). It is, therefore, undisputed that Plaintiffs spent the vast majority of their time performing exempt tasks, including collecting and analyzing a client's financial information, advising the client about investment opportunities, and recommending financial products that are suitable to the client's particular financial status. *See* Op. Ltr., 2016 WL 3832994, at *5. Furthermore, whatever amount of time Plaintiffs spent "cold" and "warm" calling, the Court finds that activity to constitute exempt "business development activities." *See id.*; *Hein*, 511 F. Supp. 2d at 573. Plaintiffs' primary duty satisfied the Exemption.

9

### v. Discretion and Independent Judgment

The undisputed facts also clearly establish that Plaintiffs exercised discretion and independent judgment. Plaintiffs' attempts to create factual disputes to the contrary are unavailing. *See* Pls.' Opp'n at 36–39. Plaintiffs testified that they had varying degrees of interaction with their supervisors, ranging from daily to sporadic interaction. *See* Part I, *supra*, at 3 (Fact No. 9). Regardless of the frequency, however, Plaintiffs admitted that they did not need preapproval from their supervisors to execute transactions on behalf of their clients, except in limited circumstances and on rare occasions. *See id.* (Fact No. 10). In making investment recommendations, Plaintiffs used their discretion and judgment in choosing from a "huge array" of MSSB financial products. *See id.* (Fact No. 5, Kuhn Dep. 75:6–7). Finally, Plaintiffs' supervisors did not directly oversee Plaintiffs' client communications or recommendations. Otten Dep. 153:6–21, Pontilena Dep. 111:25–112:3; Kuhn Dep. 75:19–21; Rosenblatt Dep. 150:11–18.

The DOL characterized the discretion requirement as involving "comparing and evaluating possible courses of conduct and acting or making a decision after the various possibilities have been considered." Op. Ltr., 2016 WL 3832994, at *6. "The decisions made as a result of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." *Id*. This is precisely what Plaintiffs did. It is an indisputable fact that Plaintiffs "evaluat[ed] the client's individual financial circumstances and investment needs and assess[ed] and compar[ed] the alternatives before making recommendations for investment options to the client," which satisfied the requirement. *Id*.

In sum, MSSB has met its burden in showing that there is no factual dispute that Plaintiffs satisfied the Exemption, and MSSB was not required to pay them overtime wages. Accordingly, MSSB's motion for summary judgment is **GRANTED** and Count I is **DISMISSED WITH PREJUDICE.**

### vi. State Law Exemptions Are Not Materially Different from the FLSA

Plaintiffs previously conceded that the exemption rules under the state statutes at issue do not materially differ from the FLSA. *See* Pls.' Mem. of Law in Supp. of Mot. for Class Certification 13 n.4, ECF No. 124-1 ("The FLSA's administrative exemption does not materially differ from those of the state wage and hour laws of New York, New Jersey and Connecticut."). Plaintiffs now try to distinguish the New Jersey law from the FLSA by arguing that the New Jersey law did not adopt the FLSA's version of the Exemption until September 6, 2011. Since Plaintiffs Otten and Pontilena filed their complaints before this date, they contend that the previous, more narrow version of the Exemption should apply. *See* Pls.' Opp'n at 41–43.

As MSSB correctly points out, however, the previous New Jersey law was modeled after federal regulations drafted prior to 2004. *See* Defs.' Reply at 21. The DOL acknowledged in the Letter that the criteria of the Exemption were "substantially the same" in the 2004 revised regulations as they were under the prior rule. *See* Op. Ltr., 2016 WL

3832994, at *7.  Thus, the outcome under either version of the Exemption "would be essentially identical." *See id.*  Furthermore, in its commentary addressing the 2011 revision to the New Jersey exemption, the New Jersey Department of Labor and Workforce Development clarified that any discrepancy between the New Jersey law and the FLSA after 2004 was an "oversight."  *See* 43 N.J.R. 2352(a).  The Court, therefore, rejects Plaintiffs' argument and finds that there is no material difference between the New Jersey and FLSA exemptions.

The Court finds that Plaintiffs were exempt employees under New York, New Jersey and Connecticut law for the same reasons as they were under the FLSA.  Accordingly, MSSB's motion for summary judgment is **GRANTED** and all remaining counts are **DISMISSED WITH PREJUDICE**.[5]

### IV.  CONCLUSION

For the reasons stated above, MSSB's motion for summary judgment is **GRANTED** and all remaining claims are **DISMISSED WITH PREJUDICE**.  Plaintiffs' motion to strike is **DENIED** as moot.  An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

Date: February 28, 2017

---

[5] The Court does not need to reach MSSB's remaining arguments because it finds that Plaintiffs are exempt under the FLSA and state law.

11